By the Court.
These suits are brought by owners of property abutting on North High street, in the city of Columbus, to enjoin the collection of assessments for the improvement of that street. The act of March 30, 1875, under which that improvement was made, was declared unconstitutional in State ex rel. Columbus v. Mitchell et al., 31 O. S., 592. In view of that decision it is admitted that the assessments are without legal validity. Their validity is further denied by the-plaintiffs upon the ground that the ordinance for the improvement was passed without a petition therefor by the owners of two-thirds of the property abutting upon the proposed improvement, as required *306 by the act. But it is claimed by the defendants that all of the plaintiffs, either by active participation in causing the improvement to be made, or by silence with such knowledge as made it their duty to speak, are estopped from asserting the invalidity of the assessments. Some of these cases have been considered by the supreme court, and the views of that tribunal upon the general questions now presented are reported under the same title in 39 O. S., 281. The application of those views to the mass of evidence submitted is the duty before us.
The first question in logical order, if not in importance, is whether the owners of two-thirds of the feet front of the property abutting on the street to be improved, petitioned the city council for the privileges of the act of March 30, 1875, as re-required by its twenty-fourth section. Without stating the conflicting claims of counsel as to what may constitute a petitioning, within the meaning of this section, we think it clear that it implies the presentation to. the city council of an instrument of writing or printing, containing a prayer for the privileges of the act referred to, and signed by the owners of abutting property. The general and well-settled meaning of the word “ petition,” as it is used in the language of the law, implies a request in writing. Such was undoubtedly the understanding of the parties at the time of the passage of the ordinance whose validity is here questioned. Many property owners signed and presented such petitions. The city council caused the names of the persons who so signed to be arranged alphabetically, and these alone were regarded as petitioners. When questions were raised as to the sufficiency of the petition, the inquiry was whether those who have thus signed were the owners of two-thirds of the abutting property. One who did not sign a petition presented, cannot now be put in the attitude of a petitioner by evidence tending to show that he had at some time vaguely and aimlessly declared that he was in favor of the improvement.
Limiting our inquiry to the sufficiency of the petition so signed and presented, we encounter numerous questions as the property represented by the names which appear upon the petition.
*307 In some cases husbands affixed their own names to the pe-. tition, intending thereby to represent property belonging to their wives. As to some of these instances it is insisted that the signing is valid, in view of the evidence tending to show that the owners had expressly authorized their husbands to petition for them. In these cases it would be idle to inquire whether such authority was given, since it is apparent that it was never exercised. The husband’s signature did not constitute it the petition of the wife.
In other cases of this class it is insisted, that the wife has become a petitioner by reason of a ratification signed and presented to the city council after the passage of the ordinance. Whether such ratification may or may not serve to estop a plaintiff who has thus ratified, such act would seem wholly insufficient to give validity to g, petition otherwise insufficient. A sufficient petition was necessary at the time of the passage of the ordinance, and no one could ratify to the prejudice of another. One thus ratifying might thereby say that as against her the petition should be deemed sufficient, but she could not thereby change the fact that it was insufficient.
The plaintiffs assert that others whose names appear upon the petition were not petitioners, because their names were not signed by themselves. In some of these cases there is no evidence of the authority of those who affixed the signatures of the property owners, in some, such authority is shown, while in others it is shown that there was no such authority. The regularity of the proceedings of the city council is presumed, and the plaintiffs are charged with the burden of proving the irregularity which they allege. And this is true, although it calls upon them to prove a negative. But this presumption is not so far reaching as counsel for defendants claim.
One who, upon the issues joined, is charged with the burden of proving a negative, is not bound to furnish plenary proof, that is, proof excluding every hypothesis upon which the fact might be otherwise than as he asserts it to be. Consideration is due to other presumptions of law and to the rules which take account of the convenience of parties in offering their evidence. Where the plaintiffs have shown that the owner’s signature was not affixed by herself, it' is the duty of *308 the defendants who assert the validity of the signature, to show that it was affixed by some one who had authority. We do not adopt the view that such signing must be the personal act of the property owner as is argued upon the authority of the Rapp case, 14 Law Bull. It may have been properly so-held in that case in view of the provisions of the statute there considered; but those provisions are not found here. Upon the other hand we are not at all inclined to adopt so lax a rule in this respect as would be necessary to give validity to signatures affixed without any showing of authority. Certainly, the rule upon this subject must be the same whether the assessment that may be levied be large or small;. but the fact disclosed by the evidence, that in making this improvement, assessments have been levied greatly in excess-of the value of some of the property after the improvement, is an admonition that such rule ought to give full effect to the requirement of the statute that the property owners must petition for the privileges of the act.
Other questions arise out of the evidence, showing that according to the deed record, some of the petitioners conveyed away their property after signing the petition, but before the passage of the ordinance, and that others did not become owners of abutting property until after the passage of the ordinance. The act contemplated a petition signed by those who were owners of the property at the time of the passage of the ordinance. In view of the rule exempting the plaintiffs from offering plenary evidence, they were relieved of the burden incumbent on them when they showed from the public record that the petitioners in this class were not then the owners of abutting property. It then became the duty of the defendants, who asserted ownership contrary to the record to establish it.
Other exceptions of the defendants are founded on the refusal of the Master to count the signatures of the owners of undivided interests in abutting property, where the co-tenants did not sign. Since a tenant in common may, by sale and conveyance, exercise the supreme act of ownership with respect to his undivided interest, we do not see why he may not, as to that interest, be regarded as the owner, within the *309 meaning of this act. While it is true that upon partition, on account of improvements or other causes of inequality in value, the signer might not become the owner in severalty of a frontage equal in proportion to his undivided interest in the whole, this, perhaps, does not constitute a valid objection to treating him as the owner of such proportion.
Another exception is founded upon the refusal of the master to count the city of Columbus as a petitioner, and representing a frontage of seventy-eight feet of its property abutting on the improvement. It is admitted that the city is not a formal petitioner. The argument in support of this exception is that the law looks at the substance of things rather than their form, and that the city substantially petitioned when the council passed the ordinance in pursuance of the petition. This argument does not reach the desired conclusion. It assumes that the city became a petitioner upon the final passage of the ordinance, while a sufficient petition was pre-requisite to every step in its passage.
Upon the exceptions of the defendants, two hundred and eighty feet will be added to the frontage represented upon the petition as found by the Master.
Upon the exceptions of the plaintiffs, for reasons above stated, names representing a frontage of two thousand five hundred and fifty-eight feet will be stricken from the petition.
One of our number is of the opinion that the presumption in favor of the validity of the petition ought to be extended so far as to require the counting of two of the names so stricken off, while a majority strongly incline to the opinion that if a careful application of the correct rule were necessary, it would result in striking off other names than those embraced in the above deductions. But these differences of opinion are unimportant, as we all agree that the petition was clearly insufficient to authorize the city council to pass the ordinance in question, even upon the assumption that the act was constitutional.
It results from an application to this conclusion of the third and fourth propositions in Tone v. Columbus, that no one who signed the petition is thereby estopped from objecting that the *310 proceedings of the city subsequently to the petitioning were in violation of the requirements of the act. If any of the plaintiffs are estopped from alleging the ireguiarities in the proceedings of counsel as set forth in their petitions, the ground for such estoppel must be found in their active participation in the improvement, or in their culpable silence after the passage of the ordinance.
By the same authority, we may say without comment that all of the plaintiffs who voted at the election of commissioners to take charge of the improvement, are thereby so es-topped. Our attention has been called to no exceptions to the finding of the Master in this respect, and we assume that he has correctly reported the plaintiffs who then voted.
A majority are of the opinion that those who presented to the council, subsequently to the passage of the ordinance, a ratification of the acts of their husbands who had previously signed the petition with their own names, intending thereby to represent the property which belonged to those who so ratified, are also estopped. This, because a ratification after the passage of the ordinance was an active participation in causing the improvement to be made which, according to the doctrine of the Tone ease, is a waiver of the irregularities now complained of — an act which assimilates their position to that of those who voted at the election of commissioners.
Those of the plaintiffs who have derived title from those who voted for commissioners, or ratified the petition as above indicated, are subject to the same rule that would have been applied to their grantors.
There are twenty-three of these property holders who, in the arguments, have been called “ the silent ones,” who claim that the city should be enjoined from collecting the amount on this property, for the reason that the owners of two-thirds of the feet front of abutting property did not sign a petition to council for the improvement, and therefore in passing the ordinance the council acted without jurisdiction.
As to this class, the city in substance says that the ordinance was passed for the benefit and convenience of the plaintiffs ; that they had due notice of its passage; that the cost and expense of the improvement were to be paid by assessing their *311 property; that they had knowledge of the subsequent proceedings under the ordinance and that the improvement was being made, and that they knew that some of the owners of abutting property claimed that the proceedings of the council were irregular and defective, by reason of the fact that the owners of two-thirds of the property had not signed petitions ; that it was at all times within the power of plaintiffs to prevent the making of said improvement by legal procedure, and that in the exercise of good faith it was their duty to so prevent it, unless they intended to pay their assessable portion; but that instead of taking any such procedure, they remained idle and silent and made use of no means to prevent the election of commissioners, the letting of the contract of such work on said improvement, the issue and sale of bonds to pay for the cost of the same, or ■any one of these various measures. That the property of plaintiffs was greatly improved and increased in value by said improvement.
The city states that before the passage of the ordinance permitting the improvement, the city used due diligence and made use of every means reasonably within its power, to ascertain whether said owners of two-thirds had signed said petition ; and on the passage of the ordinance the city council duly found and determined that the owners of the requisite number had signed, and acted in good faith in the belief, and assumed that the requisite number had signed; and that after the passage of the ordinance certain memorials and remonstrances were presented to the council, setting forth that a sufficient number had not signed; and thereupon said city council caused new and additional inquiry to be made, and were again assured by the reply of its engineer that the requisite number had signed the petition, and so it avers, that the requisite two-thirds did, in fact, sign said petition, and that prior to the completion of the improvement, the plaintiffs never objected to the making of said improvement, and never disclosed to said council, or said board of commissioners, any intention on their part to resist the payment of an assessment on their property therefor.
And the city claims, that these plaintiffs, by silence and acquiescence with knowledge, are estopped from setting up the in *312 validity of the ordinance, permitting the improvement, and the injunction should be dismissed.
To estop persons, coming under this class of silent ones, from, asserting the invalidity of the ordinance and of the assessment, the supreme court in the case of Tone v. City of Columbus, 39 Ohio St., have decided that it must be shown that the owner had knowledge,
1. That the improvement was being made;
2. That it was intended to assess the cost thereof, or some part of it, upon his property ;
3. That the infirmity or defect in the proceedings existed which he is estopped from asserting;
4. It must appear that some special benefit was derived from said improvement, which it is inequitable under the circumstances he should enjoy without compensation. While such owner is presumed to know of the invalidity of the statute,, a presumption of knowledge does not exist as to those who are silent merely, with regard to the illegality of the proceedings of the council or the public officers, which they have the right to assume are regular until they have knowledge to the contrary.
Unless the facts which amount to an estoppel are shown, the case of Mitchell, in 31 Ohio State, and Tone, in the 39th, settle the question that the plaintiff is in time with his petition when the tax is placed on the duplicate or sought to be enforced against him.
The question now to be determined is, whether the plaintiffs come within the rules which the supreme court say, must ■prevail in order to estop them.
So far as the allegations of the petition in these cases are concerned, they are substantially the same as those in the Tone case, except that none of them signed the petition.
In that case the court say: “ It is i nsisted, however, that the plaintiffs in error now resisting the payment of the assessment, are estopped by their silence which it is claimed amounts to acquiescence, or a waiver of the infirmities in the statute and the proceedings under it. The claim is that sufficient appears to establish such estoppel, to-wit, that the plaintiffs had knowledge that the work was contemplated, ordered and completed; that they had knowledge also that the city contem *313 plated that the cost of the improvement should be assessed upon the abutting property, and during all the time from the initiatory steps until the completion of the assessment they were silent.”
But the court say: “ There is an important element of estoppel wanting here, viz.: knowledge that the city council was acting illegally, or, in other words, knowledge of the facts upon which they now rely. The doctrine, that a person remaining silent when he ought, in the exercise of good faith, to have spoken, will not be allowed to speak when in the exercise of the same good faith, he ought to remain silent, cannot be extended to a person who is innocently ignorant of the fact upon which his right depends. “ How could the property owner speak of the defect which it is claimed he has waived by his silence, unless he had knowledge of the defect. To hold him responsible for his want of knowledge, facts must be shown which made it his duty to inform himself. To sustain an estoppel, because of omission to speak, there must be both the opportunity and the duty to speak; the party maintaining silence must be in a situation to know that some one is- relying on his silence, and acting, or about to act, as he would not have done had he spoken and asserted his right. And in the absence of any evidence of previous knowledge on his p?.rt of their unlawful action, he is on time with his protest when they proceed to deprive him of his rights under such proceedings.” And the court says “ there can be no waiver of this defect, and no estoppel which will prevent him from asserting it after the work is completed, if he is ignorant of it before the work is completed, unless indeed circumstances exist, which made it his duty to inform himself, or which show his ignorance to be culpable.
“Just how this knowledge is t© be shown, it is not easy to say; that it may be shown by circumstances in this as in any other case where knowledge is an essential element, is no doubt true. Infirmities in the public statute he may be presumed to know; but not in the proceedings of the council or municipal officers, whose acts, as we have seen, he has the right to presume are regular.”
These rules thus laid down by the supreme court, must be the guide for us in the determination of the questions at issue. *314 By these rules then, plaintiff has a right to presume, that the acts of the council and the municipal officers in this improvement are all regular.
We think it may be conceded that plaintiffs had knowlédge that the improvement was being made, for most of them resided in the neighborhood, and many of them saw its progress from day to day. But it has not been shown “ that plaintiffs hád knowledge that it was intended to assess the cost thereof, or some part of it, upon their property,” While the knowledge may be presumed against those who petitioned for the improvement under an act which only contemplated the assessment to be made on the abutting property, the presumption will not attach to one not a petitioner; but knowledge of the fact must be brought home to him and proven ; “because,” as the court says, “cities may improve the public streets out of the general fund, and without special assessment.”
Has it been shown that they had knowledge that the proceedings of council were invalid for want of a jurisdiction conferred on it by the petition of the owners of two-thirds of the property ? Or have such circumstances been proven to exist which made it their duty to inform themselves, or which show their ignorance to be culpable? The only evidence tending to show knowledge of the defect is, that there were rumors among the property owners that the necessary two-thirds had not petitioned; that meetings were held at different times and places on the line of the street, at which speeches were made and memorials and remonstrances read, and sent to the authorities, setting forth that as the opinion of the remonstrants and memorialists, such was the fact. On the other hand it is proven, that upon the receipt of these memorials, the city coun&il appointed committees to examine the matter; had the city engineer specially examine titles and plats and make measurements, and upon their report re-asserted to the public that the necessary two-thirds had petitioned, and that the council consequenly had jurisdiction to pass the ordinance. Neither these remonstrances, memorials or rumors can be said to have conveyed knowledge that the ordinance was defective. At best they were but evidences of *315 the divided opinion of the people, which opinion was for the time put to rest by the action of the council, after an apparently full investigation, officially announcing that a popular opinion as to the defect was unfounded.
During all these ten years of antagonism and litigation, it cannot be said that up to this time, either the property owners or the city council knew of the invalidity of the order. It was found, as before stated, by the council, its committee and agents, that the necessary number had signed. There was no decision upon that point in either the Mitchell or Tone case; the Master to whom the case was referred, by the court of common pleas, found the necessary number of petitioners, and the court of common please confirmed this finding in that respect. So that until to-day it cannot be said, that by any decision of a court having jurisdiction of the matter, or body of competent men who have examined it, it has been anything else than an open question, the true state of which no man knew.
How, then, can these property owners, many of them having little education, some only reading or speaking a foreign language, be said to have known it ?
We are constrained, therefore, to hold that these silent ones had no knowledge of the invalidity of the ordinance.
Have circumstances been found which made it their duty to inform themselves of the defects, or which show their ignorance to be culpable ?
The answer to this question would depend largely on whether they had knowledge that the act was to affect them or their property. For negligence is not in law imputed to any person, who does not inquire, or remains ignorant, of a matter which does not concern him. If they had that knowledge, and any question as to the legality of the proceedings were raised, then it would be the duty of the owners to make reasonable enquiries to ascertain the facts, and to communicate such information to the parties about to act, unless they already had it, as would prevent them doing acts which they would otherwise do'without said knowledge. But what are such reasonable efforts to inform themselves, as the circumstances of this case would devolve on them ?
The testimony shows that the street to be improved is about 3^- miles long, or a total frontage of seven miles — owned by *316 over one hundred different owners, some of them minors, married women, doweresses, non-residents, lots divided into all sizes, from 40 feet front to over 1,500 feet.
To ascertain whether the owners of two-thirds of the property have petitioned, it would be necessary to consult maps, records, individual owners, and measurements of the complete frontal feet. Can it be said, with any reason, that the duty to do this, in order to acquire a knowledge whether the requisite owners of front feet had petitioned, would devolve upon these silent owners? Rather would it not be more reasonable to say that this was the duty of the corporation having charge of the work, and in its employ clerks; committees, engineers and attorneys, who have special facilities and education for that purpose ? Indeed, this is the very duty imposed by the act on the city council. They had no authority whatever to pass an ordinance authorizing the improvement, except on petition of the owners of two-thirds of the front feet abutting on the street. And before passing it they should have . known to a certainty that the requisite number had signed. None of the petitioners guaranteed by his signature, nor was he so required, that the requisite number was on the petition. Each signed for himself alone, and the council should have ascertained that the aggregate signers comprised the owners of two-thirds of abutting property, before taking final action. Such being the duty of council, the property-holders might well have relied on their action as being in accordance with law.
In some of the answers the city says that the property-holders knew, as well as it did, the infirmity of the ordinance, and that it acted in good faith, supposing that the necessary number had signed to give jurisdiction. At best this makes out a case of mutual mistake, and in such case neither is estopped. This doctrine was early laid down in our state. In 7 Ohio State, 99, it was held that where owners of adjacent property, •each being ignorant of their true line, built a sewer where they supposed the true line was, they were not estopped (in the absence of an agreement that that should be their boundaries) each to claim his true line.
These property-holders then had no knowledge of the defect. There were no circumstances which made it their duty to en- *317 •quire, nor which show their ignorance to be culpable. They had no knowledge which the council did not possess, and they could not with such reasonable diligence as the law imposed ■ on them, have obtained it. And the council did not rely on their sil.enee, and was not induced by that silence to do any act which it would not otherwise have done, but without this assumed the responsibility of passing the ordinance, under a mistaken idea that the petition had the necessary number of signers to give it jurisdiction. In so doing it acted at its peril, and these plaintiffs are not estopped ■to set up the want of jurisdiction of council in the premises, and the invalidity of the assessments as to them.
Nor can they be held liable, under the decision in the Tone case, for any special or other benefit which accrued to their property from the improvement. As we understand that case, before an owner can be held for special benefits, the four conditions must combine in him: —proof that, (1), he had knowledge of the improvement; (2), that it was intended to assess it on his property; (3), knowledge that the infirmity existed, which he is estopped from asserting, and (4), that a special benefit accrued to his property which it is inequitable for him to enjoy without compensation. Two of these essential conditions are wanting as to these silent parties, and under that decision we must hold that they are not liable to any assessment, and the injunction should be made perpetual in their cases.
Some of these plaintiffs remonstrated against the passage of the ordinance, and here again, giving effect to the opinion of the court in Tone v. The City of Columbus, 39 O. S., 281, as the law governing us, it only remains to be seen whether the plaintiff is within the rule of that case excusing him as a remonstrant.
In that case the court say : “ What effect the signing of a remonstrance against the passage of the ordinance and presenting it to the city council, as in Carter's cast, will have, will depend largely upon the subsequent conduct of the signers. While they are in the attitude of remonstrants, it certainly cannot be maintained that they are silent or acquiescing.”
The court here is undoubtedly speaking only of such re.monstrance as was described in Carter’s Petition.
*318 The allegation is, “ he (Carter) did not petition said city council to pass said ordinance, but on the contrary did sign and assist in circulating a remonstrance against the passing of said ordinance, and that said ordinance was passed against the remonstrance of plaintiff and very many others of the owners of the property fronting on said improvement.”
The evidence shows that the plaintiffs of this class signed and presented to the • city council a paper, in which they asserted', upon information and belief, that the petition previously presented was insufficient to authorize the passage of the ordinance, setting out in detail many objections to its sufficiency, and protesting against further proceedings in the premises.
To be an effective remonstrance against the enterprise, so as to entitle the party to the benefit of the rule of law applicable to the case, it must be made by a person whose rights may be affected, to persons or officers authorized to act upon it to some practical end, at a time when such action could be offevail and not interfere with any vested rights, and must be expressed in such language as plainly and fairly informs those for whose action it is intended, of the purpose sought; and such purpose must be the interception or termination of the enterprise in hand.
There can be no doubt that a proper remonstrance presented to the city council before the passage of the ordinance would be effectual and sufficient.
But the remonstrance in question was not presented to that body until after the ordinance was passed, though before the election of commissioners or the taking of any steps toward making any contract.
The question is, whether this is such remonstrance as entitled the parties to the benefit of the rule. We are of opinion it is, even if it be conceded that it discloses knowledge of the defect complained of. The remonstrance plainly expresses hostility to the enterprise. It asks the ordinance to be repealed, and solemnly protests against the improvement, and insists that the proceeding is illegal and unauthorized, and it is presented by parties whose rights are involved.
*319 It must be borne in mind that none of these remontrants were petitioners, and they did not, therefore, affirm the validity of the statute. They were not active participants in, or promoters of the enterprise after the ordinance passed, and therefore did not in any way affirm the validity of the ordinance. As to them, therefore, the statute conferred no authority on the city council to enact the ordinance. As to them the council was without jurisdiction if the statute was valid — for the requisite two-thirds had not petitioned, and the council, therefore, neither had power to pass or enforce the ordinance.
No contracts had been made and no rights became vested, to be injuriously affected by a repeal of the ordinance and an abandonment of the enterprise. The city council at the time this remonstrance was presented, had power to do this. It was their official duty then to do it.
The remonstrance was then presented to the proper officers or authorities, who might and should have acted on it at a time when such action would have been effective, and not prejudicial to any one.
There is nothing in the testimony in this case to show that these plaintiffs ceased to be such remonstrants, or abandoned .their attitude as such, or became promoters of the movement. To require these remonstrants to commence suits to enjoin or do other acts of hostility to the improvement, is to require them to do something more than to continue in their attitude of remonstrants, and therefore to require more than is prescribed as their duty in the Tone, case.
Others pointedly remonstrated in a paper submitted to the city council after the election of the commissioners. It is to be observed that these remonstrants disclose no knowledge of any defect in the proceedings of council, and their position is at least as strong as that of..those who were silent without knowledge of the defect complained of. But then the city might have stopped the improvement, upon the ground of the unconstitutionality of the act, if not upon other grounds.
In the seventeen cases in which the plaintiffs so voted or ratified, or derived title from those who did, the petitions will be dismissed.
Lorenzo English, W. O. Henderson, J. T. Holmes, Albery & Air bery, W. J. Gilmore, Watson & Burr, and David Stalter, for plaintiffs.
G. T. Clark, Jones & Jones, and James Caren, city solicitor, contra.
In the remaining forty-five cases the injunctions will be made perpetual.